## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**HENRIETTA AUSTIN,**

      **Plaintiff,**

**v.**                                      **Civil Action No.:**
                                               **3:15-CV40-MCR/CJK**

**FL HUD ROSEWOOD, LLC,**           **OPPOSED**

      **Defendant.**
_____/

## DEFENDANT FL HUD ROSEWOOD, LLC'S MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, Defendant, FL HUD ROSEWOOD, LLC ("Rosewood"), moves for a new trial on both liability and damages or, in the alternative, for remittitur. In support, Rosewood states the following:

## I.    INTRODUCTION

Rosewood is entitled to a new trial because the clear weight of the evidence demonstrates that (1) the prejudicial reference made by Plaintiff Henrietta Austin ("Austin") regarding being "forced out" of her position at Rosewood—which was explicitly prohibited by the Court pursuant to Rosewood's motion in limine because it was "highly prejudicial"—prevented Rosewood from obtaining a fair trial on the merits; and (2) there is no legal or evidentiary basis for the jury's award

1

to Plaintiff of emotional distress damages in the amount of $125,000.00; and (3) this Court should have stricken Juror Number 3 for cause pursuant to Rosewood's motion after he revealed that he had "*ethical disagreements with the court system and the legitimacy of the United States.*"  For these reasons, Rosewood respectfully requests that the Court grant a new trial, or alternatively, remittitur.

## II.    STANDARD OF REVIEW

While the considerations governing the resolution of a motion for a new trial under Federal Rule of Civil Procedure 59 are analogous to those that dictate the disposition of a motion for judgment as a matter of law, the showing a moving party must make to obtain a new trial is less arduous than that required in the context of Rule 50.  Specifically, unlike a motion for judgment as a matter of law, the court is free to independently weigh the evidence when deciding a motion for new trial. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir.1982). Importantly, as the judicial body with a "ring-side" view of the evidence, the trial court has significant discretion in ruling on a motion for new trial.  *See, e.g., Neal v. Toyota Motor Corp.*, 823 F. Supp. 939, 942 (N.D. Ga. 1993).  In doing so, the court is to view not only that evidence favoring the verdict but also the evidence in favor of the party seeking a new trial.  *Id.*  Indeed, a court may grant a new trial for reasons which would not support judgment as a matter of law. *O'Neil v. W.R. Grace and Co.*, 410 F.2d 908, 913 (5th Cir.1969). A court should grant a motion

for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001). Federal Rule of Civil Procedure 59(a) allows for a new trial "on all or some of the issues." Fed. R. Civ. P. 59(a). Also, "a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1266 (11th Cir. 2008).

## III. ARGUMENT

### A. A New Trial is Warranted Because Plaintiff Presented Evidence that Was Prohibited by the Court's Order on a Pre-Trial Motion in Limine, Thereby Preventing Rosewood From Obtaining a Fair Trial on the Merits.

Rosewood is entitled to a new trial because it was unfairly prejudiced by Plaintiff presenting evidence regarding a "constructive discharge" claim upon which Rosewood had previously prevailed at the summary judgment stage. *See Christopher v. Florida*, 449 F.3d 1360, 1367 (11th Cir. 2006) (granting a new trial where "counsel's improper closing argument prejudiced the substantial rights of Defendants by taking away from Defendants the benefits of the partial summary judgment they had won before trial and by incorrectly expanding the grounds for liability at trial to include grounds ruled out by the court."). Additionally, Austin

specifically violated a *limine* order precluding her from presenting evidence, testimony or argument with respect to the terms "constructive discharge," "forced resignation," or any variation thereof. As other federal courts have held, violations of a *limine* order are an appropriate basis for the grant of a new trial. *See, e.g., Black v. Shultz*, 530 F.3d 702, 706 (8th Cir. 2008) (violation of *limine* order may serve as basis for new trial when the order is specific in its prohibition and violation is clear and where violation constitutes prejudicial error or results in denial of fair trial); *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 848 (N.D. Okla. 2007) (granting a new trial where defendant demonstrated that it  was prejudiced by plaintiffs' counsel's violation of *limine* order, and the jury's verdict for noneconomic damages supported such a conclusion).

This Court granted summary judgment in favor of Rosewood on all of Austin's claims that relied on the theory of "constructive discharge" or a "forced resignation." Specifically, the Court held that Austin could not demonstrate that Rosewood's conduct rose to an intolerable level such that she could maintain a claim under the theory of constructive discharge. *See* ECF # 52 at p. 9. Despite this ruling, Rosewood correctly anticipated that this issue would still arise at trial, so Rosewood took appropriate action to prohibit any prejudice from the introduction of evidence on this issue by filing a motion in *limine*. *See* ECF # 62, at p. 6. In its motion, Rosewood specifically argued that "[i]f Austin is permitted

to offer evidence, testimony and argument that she was 'forced to resign' her employment with Rosewood, the jury will be miseld into believing that this is an actual issue in the lawsuit, when, as this Court has held, Austin was not constructively discharged." *Id.* Likewise, Rosewood argued that such evidence "would unfairly prejudice Rosewood and serve no purpose other than to foul Rosewood's reputation in front of the jury[.]" *Id.*

The Court granted Rosewood's motion in *limine*, specifically finding that:

> [Rosewood's] motion should be granted with respect to the specific terms "constructive discharge" and "forced to resign" because their use, ***in any variation***, would be irrelevant and unduly prejudicial under Rule 403. ***This language has a specific, highly prejudicial meaning both legally and in lay usage.*** As Plaintiff's constructive discharge claim did not survive summary judgment, there is no longer a basis in either the facts or the law for permitting the use of these terms to describe any aspect of this case.

*See* ECF # 72, at pp. 4-5. In sum, prior to trial, the Court explicitly prohibited Austin from providing any testimony or argument regarding the theory that Rosewood constructively discharged her from employment, or forced her to resign, and, in doing so, the Court specifically ruled that such evidence would be highly prejudicial to Rosewood.

Despite this *limine* order, under direct examination, Austin nonetheless provided testimony indicating that Dwayne Lewis, her supervisor, was "trying to force [her] out" at Rosewood. *See* Trial Trx., Day Two, p. 88-89 (in which Austin

testifies that her supervisor was trying to force her out, that he was giving her a hard time, and that she "tried to stick it out"). Immediately upon providing this testimony, counsel for Rosewood requested a bench conference to address the issue of Austin's violation of the *limine* order. *See* Trial Trx, Day Two, pp. In response, the Court unilaterally made the decision to provide the following limiting instruction:

> Ladies and gentlemen, I want to advise you all of something you'll certainly learn about at the time of jury instructions, but based on the testimony just now of Ms. Austin that Mr. Lewis was trying for force her out, you're advised that Ms. Austin does not have a claim in this case for constructive discharge. She does not have a claim for construction discharge or that she was forced out. That's not a part of her claim in this case.

*See* Trial Trx., Day Two, p. 88-89

Despite this Court's instruction, there is no question that Austin's testimony—which this Court prohibited in its *limine* order because it was "highly prejudicial"—impacted the jury's deliberations in this case. Namely, after approximately six hours of deliberations, the jury posed one question to the Court: "What is the definition of **constructive discharge**?" *See* Trial Trx., Day Three, at pp. 4-5 (emphasis added). Again, the Court provided a response indicating that Austin did not maintain a constructive discharge claim. Nevertheless, based on this jury question alone, it is undeniable that Austin's prohibited testimony regarding being "forced out" impacted the jury's deliberation in spite of the Court's

limiting instruction. Notably, the only time that the phrase "constructive discharge" was used in the jury's presence throughout the entire trial was during the Court's limiting instruction after Austin violated the *limine* order. The jury's question thus reveals that the limiting instruction not only failed to prevent the jury from considering Austin's prohibited testimony, but instead drew further attention to the prejudicial issue that the *limine* order sought to preclude in its entirety. Moreover, as discussed *infra*, the jury's ultimate award of emotional distress damages in the amount of $125,000.00 greatly exceeds the amount that is reasonable considering Austin's extraordinarily limited evidence of emotional distress. Consequently, Austin's prohibited testimony denied Rosewood a fair trial.

Rule 403 of the Federal Rules of Evidence contemplates that highly prejudicial evidence inevitably impacts a jury's ability to properly evaluate a claim regardless of how the jury is instructed. Specifically, the Advisory Committee Notes following Rule 403 provide that "[i]n reaching a decision whether to exclude [evidence] on grounds of unfair prejudice, consideration should be given to the probable effectiveness or ***lack of effectiveness*** of a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes (emphasis added). Other Eleventh Circuit district courts also have recognized that, when evidence is precluded under Rule 403 because of its prejudicial nature, "the possibility of a limiting instruction does not cure the problem." *Zamboni v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-11957

(SAS), 2015 WL 221150, at *4 (M.D. Fla. Jan. 13, 2015). "The point of Rule 403—the reason why courts must balance probative value against prejudicial effect—is that certain types of evidence can distort the jury's view of a case *regardless of what instruction it receives*." *Zamboni*, 2015 WL 221150, at *4 (emphasis added); *see also McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) (finding that curative instructions do not always eradicate prejudicial evidence or argument). As the Fifth Circuit Court of Appeals noted during its time frame as the predecessor to the Eleventh Circuit, the cleansing effect of cautionary instructions is oftentimes doubtful because "you can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977); *see also City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 759 (6th Cir. 1980) (finding that a curative instruction was not sufficient to remove the probability of prejudice and that an excessive verdict in light of the evidence demonstrates a prejudicial impact); *Fineman v. Armstrong World Indus., Inc.*, 774 F. Supp. 266, 270 (D.N.J. 1990) (holding that "[i]t is beyond refute, however, that cautionary instructions do not necessarily remove the probability of prejudice").

Here, prior to trial, the Court plainly determined that any testimony or reference to Austin's dismissed claim of "constructive discharge" or her allegations of a "forced resignation" would be "highly prejudicial" to Rosewood and,

accordingly, specifically prohibited such evidence.  Nonetheless, Austin presented testimony in violation of that *limine* order and, despite the Court's effort to cure this violation through a limiting instruction, the damage was already done.  This resulted in, at best, confusion of the issues by the jury, which was exemplified by the jury's mid-deliberation question to the Court.  Coupled with the excessive award of emotional distress damages, it is clear that the introduction of the "highly prejudicial" testimony in violation of the Court's *limine* order denied Rosewood the right to a fair trial.  Accordingly, the only remedy is for this Court to grant Rosewood's request for a new trial.

**B.**  **A New Trial, or Remittitur, is Warranted Because the Jury's Award of \$125,000.00 in Emotional Distress Damages Exceeds a Reasonable Amount as Established by the Evidence.**

Generally, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence. *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985) (citing *Howell v. Marmpegaso Compania Naviera, S.A.*, 536 F.2d 1032, 1034–35 (5th Cir.1976); *Natco, Inc. v. Williams Brothers Engineering Co.*, 489 F.2d 639, 641 (5th Cir.1974)); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1266 (11th Cir. 2008).  The court must grant a new trial or remittitur when the jury's damage award exceeds the maximum limit of a reasonable range within which the jury may properly operate.

*Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1380 (11th Cir. 1982) (citing *Keyes v. Lauga*, 635 F.2d 330 (5th Cir. 1981); *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665 (5th Cir. 1974); *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir.1970), *modified* 456 F.2d 180 (5th Cir.1972), *cert. denied* 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972)).

To recover more than nominal damages for emotional distress, a plaintiff must prove an actual injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1239 (11th Cir. 2000). "Although compensable damage must be proven, general compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity. Compensatory damages may be inferred from the circumstances as well as proved by the testimony." *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999). A plaintiff's own testimony may suffice toward that end, and any evidentiary shortcomings go more to the amount, rather than the fact, of damage. *Id.* (citing *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983)).

### 1.     Austin's Evidence of Emotional Distress Damages.

At trial, Austin presented extraordinarily limited evidence of any emotional distress at all. The only evidence presented by Austin consisted of her own testimony. She presented no corroborating testimony, and she never even specifically claimed that she suffered any emotional or psychological problems

because she received a first warning write-up or because she was assigned additional job duties. Likewise, Austin never claimed that she suffered emotional distress that required any medical treatment, and she did not present evidence from an expert to opine about any physical, medical or psychological problems that she suffered.

Of equal importance, Austin's testimony on direct examination focused only on emotional distress that occurred because she resigned her position at Rosewood, not because she was given a first-warning write-up or because she was assigned additional job duties, which was the basis of her retaliation claim. Her specific testimony on direct examination follows:

> Q.    How did it affect you, **_leaving Rosewood_**?
>
> A.    It affected me real bad, you know. I was sick about this job, you know.
>
> Q.    What do you mean you were sick about the job?
>
> A.    I'm just saying I started having stomach problems and everything, you know. This was about the best job I ever had. And I loved the residents and I loved Rosewood and I got along with everybody out there and everybody loved me.
>
> Q.    What was wrong with your stomach?
>
> A.    I guess it was just nervous, you know.
>
> Q.    Were you having any other problems at the time?
>
> A.    No. I ended up taking high blood pills.

Q.     You didn't have high blood pressure before you left Rosewood?

A.     No.

Q.     Did any doctor say, Hey, look, it's because of the stuff you're doing at Rosewood?

A.     And then me and my husband separated a whole year because I just had a bad attitude, you know.

Q.     You weren't getting along with your husband?

A.     No.

Q.     What did you do?

A.     I moved in with my daughter.

Q.     How long?

A.     About a year.

Q.     Did you and your husband get back together?

A.     Yeah.

Q.     How long ago was it that you got back together?

A.     Last year, I think, last year.

Q.     So you guys have stayed together for a little while and then you left? Did you leave or he leave?

A.     Huh?

Q.     Did you leave or did he leave?

A. I left. I left. We just weren't getting along, you know. ***I guess me being home every day was just -- I'm so used to working, you know***, and I guess I was a grouch and the least little thing got on my nerves, I guess.

Trial Tx., Day One, pp. 140-41 (emphases added). Likewise, on cross-examination, Austin's testimony addressed emotional distress only subsequent to the end of her employment:

Q. Now, you told us yesterday near the end of your deposition -- I'm sorry -- your examination that you had visited a doctor ***after you left Rosewood***. Do you recall that?

A. Yes, I had to go see –

Q. You had went to what was your primary care physician, right?

A. Yes.

Q. And that was about ***six months after you left Rosewood***, right?

A. Yea, I don't recall but I -- yeah.

Q. By then -- well, you had said your doctor had prescribed something for an upset stomach?

A. Yeah.

Q. Your doctor prescribed you with some acid reflux medication, right?

A. Yeah.

Q. ***By that point you had already been working somewhere else for about five months***, hadn't you?

A.    Oh, yeah, I had got a job.

Q.    And about that time, you had also been involved in a separation from your husband, right?

A.    No.

Q.    Your testimony is you had not been dealing with a separation from your husband?

A.    I had separated from him -- I was still working but I wasn't working, you know, regular hours, I was just working a little bit part time, you know, like two or three days up to Kay's Fashion, because, you know, after she had sold the store -- I had worked like two months, and then she sold the store to this lady named Joyce, and then after Kay got it back then I went back to work for her. So it was like -- I don't know, I guess it was like two or three months, two or three months. I don't recall when we separated, but I know I was gone like a year.

Q.    Other than seeing your doctor and getting some acid reflux medication -- which you stopped after awhile, didn't you?

A.    I took those pills for like a year, I think.

Q.    Now, you didn't speak with any other physician or mental health counselor or even a pastor about separating from Rosewood, did you?

A.    Yea, I talked to my sister. She's like a minister. She's spiritual, and I always talked to my sister about -- you know, I call her every day and I talk to her every day.

Q.    But she's not -- well, you said she's like a spiritual –

A.    Yeah, she's –

Q.    Like a pastor?

A.    Yeah, she's like -- teaches bible class and stuff like that at the church.  They are Holiness.

Trial Tx., Day Two, pp. 72-74.  Austin's emotional distress testimony included only this extraordinarily limited testimony.  Austin presented no competent evidence of any alleged emotional distress that was caused by any of the events occurring *prior to her resignation from Rosewood*.  And any emotional distress because of her resignation is not attributable to Rosewood because the Court ruled on summary judgment that Austin could not maintain a claim for constructive discharge.  In other words, Austin presented no evidence demonstrating that any purported emotional distress she suffered was proximately caused by receiving a first-warning write-up or additional job assignments.  Consequently, Austin never presented ***any*** evidence of true emotional distress (*i.e.*, depression, anxiety, etc.) tied to the alleged retaliatory actions at issue at trial.

The only other possible testimony to support any claim for emotional distress damages is Austin's off-hand, non-responsive comment that, upon receiving the first-warning write-up, she "cried like a baby."  Trial Trx., Day One, p. 149.  But, even if the Court considers this testimony as evidence of potential emotional distress—which it should not because Austin provided no additional

substantive testimony regarding how she was affected[1]—Austin's testimony does not suggest that this distress was either significant or continuing. In fact, she mentions "crying" over this first-warning write-up only in passing without providing any additional details whatsoever.

And, finally, it should be noted that, in closing argument and rebuttal, Austin did not identify any specific evidence that supported an award of emotional distress damage. Instead, in the only mention of damages whatsoever, Austin's counsel appealed to the jury's potential sympathies and prejudices without mentioning any specific basis for an award of emotional distress damages: "Hey, look, if you think she suffered any damages, give her what you think is full and fair." Trial Trx., Day Two, p. 197. The failure of Austin's counsel to discuss any evidence of actual emotional distress suffered by Austin in the closing argument underscores the absolute lack of evidence in this case.

## 2. Factors to Consider in Evaluating Jury Award of Emotional Distress Damages.

The Supreme Court of the United States has long required that compensatory damages for emotional distress "be supported by competent evidence concerning the injury." *Carey v. Piphus*, 435 U.S. 247, 264 n. 20 (1978). Failure to establish "actual injury" with sufficient evidence will result in the award of only nominal

---

[1] *See, e.g., Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998) ("[H]urt feelings, anger and frustration are part of life, and [are] not the types of harm that [can] support a mental anguish award.");

damages. *Id.* at 266–67. The Eleventh Circuit Court of Appeals has further determined in the employment discrimination/retaliation context that, in marshalling evidence necessary to establish emotional distress, proof of a 'genuine injury' is necessary. *See Akouri v. State of Florida Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005) (reversing the jury's award of $552,000 in compensatory damages because of the lack of sufficient evidence to show actual injury).

Moreover, the Eleventh Circuit Court of Appeals has "never precisely delineated the factors that a court should consider in determining whether the plaintiff's evidence of emotional distress is sufficient to support the jury's award of compensatory damages for emotional distress, particularly where the plaintiff's damages evidence consists chiefly of her own testimony." *Stone v. GEICO General Ins. Co.*, No. 8:05–cv–636–T–30TBM, 2009 WL 3720954, at *6 (M.D. Fla. 2009). As further recognized in *Stone*, however, the Fourth Circuit Court of Appeals developed what the Fifth Circuit Court of Appeals later deemed to be a "magnum opus" on the issue. *Stone*, 2009 WL 3720954 at *6 (citing *Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir.1996) and *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir.1998)). In *Price*, the Fourth Circuit set forth the following factors:

> (1)    whether the plaintiff lost the esteem of her peers;

(2)     whether the plaintiff suffered physical injury as a consequence of her emotional distress;

(3)     whether the plaintiff received psychological counseling or other medical treatment;

(4)     whether the plaintiff suffered a loss of income;

(5)     the degree of emotional distress;

(6)     the context of the events surrounding the emotional distress;

(7)     the evidence tending to corroborate the plaintiff's testimony;

(8)     the nexus between the challenged conduct and the emotional distress; and

(9)     any mitigating circumstances.

*Price*, 93 F.3d at 1254 (citing *Spence v. Board of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir.1986) and *Fitzgerald v. Mountain States Telephone and Telegraph Co.*, 68 F.3d 1257, 1265–66 (10th Cir. 1995)); *see also City of Hollywood v. Hogan*, 986 So.2d 634 (Fla. 4th DCA 2008) (adopting the *Price* factors in assessing emotional distress damages in a case under the FCRA).

Applying the *Price* factors here, Austin provided no meaningful or probative, much less substantial, evidence showing that she: (1) lost the esteem of her peers at Rosewood; (2) suffered significant or lasting physical injuries (in fact, there is no evidence of any physical injury); (3) received psychological counseling or other medical treatment because of the alleged retaliatory conduct at issue; (4)

suffered a loss of income due to her emotional struggles; (5) suffered a severe degree of emotional distress; (6) suffered emotional distress as a direct result of the first-warning write-up or because of the assignment of additional job duties; (7) could corroborate her claim of emotional distress by providing testimony from other, disinterested witnesses; (8) could establish a causal link between any alleged suffering and this specific retaliatory actions at issue; or (9) could offer other mitigating evidence supporting her claim that Rosewood was responsible for her alleged suffering.

As set forth above, the only possible evidence of emotional distress presented by Austin related to the retaliatory acts at issue—the first warning write-up or the assignment of additional job duties—is one simple statement that she "cried like a baby" when she received the first warning write-up. In light of the Supreme Court's requirement that a plaintiff present competent evidence of an "actual injury," coupled with the application of the *Price* factors, this "evidence" does not support an award of emotional distress damages at all, much less an award in the amount of $125,000.00. Thus, as a matter of law, the Court should either nullify or vacate the jury's award, or reduce the jury's award to one for nominal damages.

### 3. Emotional Distress Damages in Comparable Cases.

As further discussed in *Stone*, the determination of whether a damages award exceeds a reasonable range should not be made in a vacuum, but should include consideration of the amounts awarded in other comparable cases. *Stone*, 2009 WL 3720954, at *6 (citing *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997)). Comparing the evidence, or lack thereof, in this case as support for an award of $125,000.00 in emotional distress damages with other comparable cases, it is clear that the jury's award in this case is excessive in light of the evidence.

For example, in a case with evidence very comparable to the present one, the Fourth Circuit Court of Appeals affirmed a trial court's decision to ***nullify*** a jury award for emotional distress, because the plaintiff "provided no evidence of emotional distress other than conclusory statements that she was 'devastated' and 'humiliated'" by the employer's conduct and the plaintiff could not demonstrate causality. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653 (4th Cir. 2002). In *Dennis*, the plaintiff resigned her employment after not receiving a promotion based on discrimination. *Dennis*, 290 F.3d at 644. The only viable claim presented at trial, however, was one for failure to promote, not for constructive discharge. *Id.* In nullifying the jury award for emotional distress damages, the Fourth Circuit determined that, in a case where conclusory testimony, standing alone, is the basis for emotional distress damages, the court should

"scrupulously analyze" the emotional distress award. *Id.* at 653. "The injured party must 'reasonably and sufficiently explain the circumstances of [her] injury and not resort to mere conclusory statements.'" *Id.* (internal citations omitted). Additionally, "the injury must be 'demonstrable'" and "the plaintiff must show a causal connection between the violation [of her rights] and the emotional distress." *Id.* Based on the evidence presented by the plaintiff in *Dennis*, the Fourth Circuit determined that the plaintiff "presented no demonstrable evidence of distress such as testimony of a physical symptom or a doctor's diagnosis" and "most of the distress to which she testified related to the consequences of her decision to leave [her employment] . . . rather than the discrimination [she suffered] itself." *Id.*

The circumstances in the present case are nearly identical to the *Dennis* case. Austin's evidence of emotional distress was conclusory, at best, and she provided no description of any symptoms of distress she suffered because of receiving a first-warning write-up or being assigned additional job duties. More importantly, all of the testimony presented regarding any symptoms of emotional distress unmistakably were related to Austin's decision to resign her employment, not the adverse actions at issue in the case. Had Austin's claim for constructive discharge survived summary judgment, Austin's testimony of her post-employment symptoms of distress may have supported a claim for damages. But her constructive discharge claim did not survive summary judgment, and she presented

no evidence of a causal connection between any symptoms of emotional distress and the adverse actions actually at issue in the case. Accordingly, Austin did not present evidence of symptoms of emotional distress to support any award of damages from the jury, much less to support an award of $125,000.00. Because of Austin's failure to present such evidence, this Court should nullify the jury's emotional distress award or reduce the award to nominal damages, at best.

Along the same lines, in *Flowers v. Southern Regional Physician Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001), the Court held that "[t]o recover more than nominal damages for emotional harm, a plaintiff must provide proof of 'actual injury' resulting from the [discrimination or retaliation]." *Flowers*, 247 F.3d at 238-39 (internal citations omitted). "[E]motional harm will not be presumed simply because the plaintiff is a victim of discrimination [or retaliation]." *Id.* at 239. "To demonstrate an actual, or 'specific discernible,' injury, '[t]he existence, nature, and severity of emotional harm' must be proved." *Id.* at 239 (internal citations omitted). Applying these standards, the Fifth Circuit determined that the plaintiff had "failed to present any evidence of actual injury, such as would entitle her to an award of more than nominal damages[,]" because the only evidence of injury adduced by the plaintiff involved events occurring after her employment ended that were irrelevant to the question of actual injury stemming from the discriminatory acts at issue. *Id.*

Again, applying the persuasive guidance of *Flowers* to the present case, it is clear that Austin did not present sufficient evidence to obtain an award for emotional distress damages in excess of nominal damages. As discussed above, all of the evidence presented by Austin regarding any symptoms of emotional distress were directly related to her decision to resign her employment, not the adverse actions at issue. Consequently, this Court should nullify the jury's emotional distress award or reduce the award to nominal damages.

There are numerous other comparable cases demonstrating that, at worst, a sizable remittitur is required in this case. For example, in *City of Hollywood v. Hogan*, 986 So.2d 634 (Fla. 4th DCA 2008), the Fourth District Court of Appeals considered whether a trial court committed error by not remitting an award of emotional distress damages of $1,100,000.00 in a Florida Civil Rights Act age discrimination and retaliation case.[2] *Hogan*, 986 So.2d at 649-50. The Fourth DCA held that the trial court had abused its discretion is not ordering remittitur of the excessive jury award. *Id.* at 648-50. In *Hogan*, one of the plaintiffs testified that he never sought psychological counseling, and did not suffer any lost wages except for those hypothetically lost as a result of the denial of a promotion. *Id.* at 649-50. Moreover, the Fourth DCA determined that that plaintiff "proved little

---

[2] Because *Hogan* is a Florida appellate case assessing this issue of emotional distress damages in an age discrimination/retaliation case under the Florida Civil Rights Act, this Court should consider this case as precedential.

emotional injury." *Id.* For that plaintiff, the Court stated that "[h]is case, in particular, is more of the typical case . . . with a range of $5,000 to $30,000[,]" and remanded the case to the trial court for a remittitur in that range. *Id.*

Likewise, in *Stone*, an ADEA retaliation case where the jury found for the plaintiff and awarded $200,000.00 in emotional distress damages, the court considered the employer's motion for remittitur regarding the award of emotional distress damages. *Stone*, 2009 WL 3720954. In that case, the court noted that the emotional distress suffered was of the "garden variety" type, and, the plaintiff's evidence regarding emotional distress relied primarily on her own unsubstantiated testimony. *Id.* at *5. In addition, the plaintiff never received psychological counseling or medical treatment, and she had become gainfully employed three separate times after her termination from defendant employer. *Id.* Noting that, because the plaintiff's own testimony regarding her emotional distress was of limited value, the court found that the defendant employer was entitled to a remittitur. *Id.* (*citing Price*, 93 F.3d at 1254-55). The court then determined that $50,000.00 was the maximum reasonable recovery for the degree of emotional distress and mental anguish that the plaintiff suffered. *Id.* Even so, in comparison to the evidence presented in this case, the evidence of emotional distress presented in *Stone* was much more significant than the evidence presented by Austin.

In *Bernstein v. Sephora, Div. of DFS Group L.P.*, 182 F.Supp.2d 1214 (S.D. Fla. 2002), the court considered a defendant employer's motion for remittitur as to an award of $130,500.00 for emotional distress damages in an age discrimination and retaliation case. The court granted remittitur and reduced the award to $75,000.00 on the following facts: plaintiff presented some medical testimony to corroborate her claims, but it was only partially probative. The medical evidence included that plaintiff suffered from TMJ, a painful jaw condition that could be caused by stress, but could also be caused by other things; and the plaintiff suffered from colitis, severe anxiety, nausea, and a spastic colon. *Id.* as 1228. However, the testifying physician did not expressly state that these conditions were the result of plaintiff's stress from discrimination and retaliation. Primarily, the plaintiff's evidence of emotional distress consisted of her own testimony that she felt "sick," "angry," "furious," and "upset" upon learning that she had not earned a promotion. *Id.* She also testified that she was anxious, had trouble sleeping and waking, lost her appetite, could not "find peace" within herself, and was no longer her easy-going self. *Id.* She also testified that she visited a psychologist on one occasion and wanted to visit a therapist again. *Id.* The court determined that this evidence was not enough to support an award of $130,500.00 for emotional distress and remitted the award to $75,000.00. And, once again, it should be noted that the

evidence presented in the *Sephora* case is much more significant than any evidence presented by Austin.

Finally, there are scores of comparable cases in which federal courts have granted significant remittiturs for claims of garden-variety emotional distress damages. *See, e.g., Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013) (holding that, in an age discrimination case, a plaintiff's conclusory and uncorroborated statements that he suffered emotional harm, including testimony of suffering chest pain, back pain and sleep disturbances, were insufficient to support an award of $100,000.00 for mental anguish and vacating the mental anguish aware entirely); *Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 539 (1st Cir. 2015) (affirming an order of remittitur of a jury award of $400,000 to $50,000 or a new trial, where plaintiff presented testimony of mild depression, including corroborating testimony); *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1044 (8th Cir. 2002) (plaintiff and daughter testified that plaintiff's reassignment caused embarrassment, hurt ego, and loss of self-esteem, but jury verdict remitted from $140,000 to only $50,000); *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F.Supp.2d 575, 601 (S.D.N.Y. 2010) (remitting jury's award of $1.0 million in compensatory damages for employer's act of retaliation—namely, installing a hidden camera above the employee's work station—to $10,000, where there was no evidence the employee suffered any significant damage because of the installation

of the camera and where plaintiff "did not attribute depression, anxiety or any other indicium of non-economic damage to the presence of the camera"); *Reiter v. Metro. Transp. Auth. of New York*, No. 01 Civ. 2762(JGK), 2003 WL 22271223 (S.D.N.Y. Sept. 30, 2003) (reducing award from $140,000.00 to $10,000.00, where plaintiff testified to the loss of self-esteem, anxiety and nervousness as a result of a job transfer, but failed to detail the severity, duration or consequence of the mental suffering and presented only vague and conclusory testimony); *Fowler v. New York Transit Auth.*, No. 96 Civ. 6796(JGK), 2001 WL 83228, at*13 (reducing emotional distress award from $50,000 to $25,000, where the plaintiff "did not present any evidence detailing the duration or magnitude of his emotional injuries, nor did he present evidence of medical or psychological treatment"); *Kim v. Dial Serv. Int'l*, No. 96 Civ 3327, 1997 WL 458783, at *12–13 (S.D.N.Y. Aug. 11, 1997) (evaluating $300,000.00 award under "shock the conscience" standard and reducing it to $25,000.00 because plaintiff complained only of general problems, like feeling gloomy, losing weight, and having trouble sleeping).

Considering the foregoing, the jury's award of $125,000.00 for emotional distress damages, in light of the lack of evidence presented by Austin, requires a significant remittitur, at a minimum. Under the precedential direction of the Supreme Court's *Carey* decision and the Eleventh Circuit's *Akouri* decision, this court should vacate the jury's award of $125,000.00 for emotional distress damages

and either grant a new trial or remit award to nominal damages.  Any other amount for emotional distress damages is not supported by the evidence elicited at the trial of this matter.

### C. The Court Should Have Stricken Juror No. 3 For Cause After He Revealed that He Had "Ethical Disagreements with the Court System and the Legitimacy of the United States."

During the *voir dire* process, Juror No. 3 did not provide any response to the Court's questioning on whether he, or any immediate family members, had ever been a plaintiff or defendant in a civil case.  Trial Trx., Day One, pp.50-56.  In fact, other than the mandatory introduction required by the Court, Juror No. 3 did not respond to any questions throughout the entire *voir dire* process.  Nonetheless, Juror No. 3 had revealed on his juror questionnaire that he had recently been involved in civil litigation.  Counsel for Rosewood brought this to the Court's attention, which led to individual questioning of Juror No. 3 on this issue.  Trial Trx., Day One, pp. 98-102.  During this questioning, Juror No, 3 specifically stated that (1) "[he was] and anarcho-communist [and does not] believe in the judicial system[,]" (2) he has an "ethical disagreement" with the Court's authority; (3) he has "ethical disagreements with the court system and the legitimacy of the United States[;]" and (4) he has "a lot of issues with the judicial system as a whole[.]"  *Id.*  In response to the Court's direct question on whether his personal beliefs would

influence him towards one party in this case or the other, however, Juror No. 3 stated that he did not "think it would be an issue." *Id.* at 102.

Despite the Court's rehabilitation, Juror No. 3 specifically indicated that he does not believe in the "legitimacy" of the United States of America and does not believe in the judicial system. This lack of belief in the legitimacy of the court system was underscored by the fact that Juror No. 3 did not respond to any questions during the *voir dire* process, except for his mandatory introduction. Only upon being called in for individual questioning did Juror No. 3 engage in the process and reveal his negative feelings towards the judiciary. Furthermore, in response to the Court's direct questioning on whether he could be impartial or follow the Court's instructions, his responses were not unequivocal. On two occasions, he stated that he did not "think it would be an issue." Providing hesitant or equivocal answers to such questions does not rehabilitate a prospective juror. *See Bailer v. Bd. of County Com'rs of Alachua County, Fla.*, 956 F.2d 1112, 1128-29 (11th Cir. 1992) (holding that hesitant and equivocal answers regarding questions of fairness and impartiality can serve as a basis for a cause challenge).

Subsequent to individual questioning, Rosewood moved to strike Juror No. 3 for cause and its motion was denied. Considering Juror No. 3's failure to participate substantively in the *voir dire* process, his self-professed beliefs regarding the illegitimacy of the judicial system, and his equivocal answers that he

"did not think" his feelings on the judicial system would be a problem, the Court should have stricken Juror No. 3 for cause. Because of the failure to strike Juror Number 3 for cause, Rosewood was forced to use a preemptory strike on Juror Number 3, ultimately resulting in the exhaustion of its preemptory strikes prior to the seating of all jurors. Therefore, Rosewood was specifically impacted by the failure to strike Juror No. 3 for cause and the only remedy is for the Court to grant a new trial.

## IV. CONCLUSION

Based on the foregoing, Rosewood respectfully requests that the Court enter an Order granting a new trial or, in the alternative, remitting the amount of the award for emotional distress damages to a nominal amount because of Austin's failure to present evidence to support a significant award for emotional distress.

Respectfully submitted this the 14th day of June, 2017.

<div style="margin-left: 40%;">

/s/ Daniel E. Harrell
**JEREMY C. BRANNING**
Florida Bar Number: 0507016
jbranning@clarkpartington.com
**DANIEL E. HARRELL**
Florida Bar Number: 105222
dharrel@clarkpartington.com
**CLARK PARTINGTON**
P.O. Box 13010
Pensacola, FL 32591-3010
Phone: (850) 434-9200
Fax: (850) 432-7340
Attorneys for Defendant,
FL HUD ROSEWOOD, LLC

</div>

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Pursuant to Local Rule 7.1(B), counsel for Rosewood has conferred with counsel for Austin via telephone regarding this motion and the relief requested herein. Counsel for Austin has represented to counsel for Rosewood that Austin opposes this motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Counsel for Rosewood confirms that this Motion contains 6,876 words and is in compliance with Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished electronically via the CM/ECF Filing System of the United States District Court for the Northern District of Florida to the following on this 14th day of June, 2017.

| | |
|---|---|
| Bradley S. Odom, Esq. <br> Richard D. Barlow, Esq. <br> Odom & Barlow, P.A. <br> 1800 North E. St. <br> Pensacola, FL  32501 <br> Attorneys for Plaintiff | |

/s/ Daniel E. Harrell
DANIEL E. HARRELL